# CHARLESTON.

HARVEY SHAIN *v.* WISE PACKING COMPANY *et al.*

Submitted December 11, 1923.   Decided December 22, 1923.

COMPROMISE AND SETTLEMENT—*Contract of Indemnity Held Settled by Subsequent Agreement Between Parties.*

In a suit on a contract by which defendant had agreed to indemnify plaintiff against loss for stock in a corporation then subscribed for and in which both were largely interested, and where it appears that after such contract the parties purchased other stock in the company and pledged it as collateral on their joint and several notes made for the benefit of the company, but by a subsequent written agreement between the parties, after disposing of certain·matters in difference between them specifically referred to, it is recited that as far as they know the agreement closes up all points in controversy growing out of their deals with such company, this contract should be construed as having included therein and settled the subject matter of said original contract of indemnity.

Error to Circuit Court, Marion County.

Action by Harvey Shain against the Wise Packing Company, Marcellus A. Joliff, and others. Judgment for plaintiff, and defendant last named brings error.

*Reversed, and new trial awarded.*

*Neely & Lively,* for plaintiff in error.
*Harry Shaw,* for defendant in error.

MILLER, PRESIDENT:

This is an action in assumpsit brought on the following note or contract:

"$2,375.00          Fairmont, W. Va., Jan. 11. 1911.
On demand we promise to pay to the order of H. Shain without offset and for value received twenty-three hundred and seventy-five (with interest from date) Dollars.
"This note is given to guarantee Shain against any loss on money put in Wise Packing Co., if stock proves good this note to be void, but if stock turns out bad this

note to be paid on demand and stock surrendered. Negotiable and payable at The National Bank of Fairmont, W. Va.

THE WISE PACKING
By M. A. Joliff, President.
M. A. JOLIFF.''

In his declaration plaintiff alleges that the stock of the Wise Packing Company turned out to be worthless and that he lost all the money he paid for the same. Defendants pleaded non-assumpsit. From a judgment for plaintiff in the sum of $3,972.17, entered on the verdict of a jury, defendant Joliff has appealed.

From plaintiff's testimony it appears that the Wise Packing Company was chartered in 1909, with authorized capital stock of $50,000.00, par value of shares $100.00 each. When the organization was completed or the original certificates of stock issued does not appear. The purpose of the organization of this company was to take over the business of J. U. Wise & Company, a partnership composed of J. U. Wise, W. F. Wise and the defendant Joliff. At some time 474 shares of stock were issued to J. U. Wise & Company; and about the time of the execution of the note or contract sued on 25 shares were issued to plaintiff. Defendant Joliff did not hold in his own name any of the stock. Later plaintiff transferred one share of stock to defendant Joliff, one to Vaughan Joliff and one to John W. Fleming, as he says, in order to form a board of directors outside of the Wise boys.'' In the year 1913 the stock held by J. U. Wise & Company was sold at a trustee's sale, and was purchased by plaintiff for the sum of $18,960, with the understanding that he and defendant Joliff were to take said stock equally.

At the time of the execution of the note or contract upon which this suit was brought, plaintiff had paid into the company, or had taken up its obligations, to the amount of $2,375.00. He says that he had subscribed for stock before any of this amount was paid by him. Having become dissatisfied with complications growing out of the partnership business, he demanded that the company return him the amount he had paid in, and that he be permitted to drop out of it. He

says that Joliff did not want him to drop out and agreed
to guarantee him against any loss he might sustain by remain-
ing in the company; and as a result of this agreement the
note sued on was executed.   At the time plaintiff made final
demand for the payment of the note, a short time before the
suit was brought, he tendered to the Wise Packing Company
. and Joliff a certificate for 100 shares of stock in the com-
pany, dated July 14, 1913, which was a part of the stock he
had purchased at the trustee's sale.  His only explanation why
he did not tender his original stock, as provided in the con-
tract, was that it had been pledged as collateral on a note
of the company, and that when defendant Joliff paid off the
note he took up the certificate and retained it.

The contention of Joliff is that by a subsequent agreement
entered into between him and plaintiff all matters and dif-
ferences growing out of their many transactions in connec-
tion with the packing company and the partnership were
finally adjusted and settled satisfactorily to both parties. This
agreement, in writing and signed by both parties, was exe-
cuted November 20, 1914.   It provided in substance that the
parties having a number of properties and business in part-
nership, they desired to separate them and make the following
arrangements:  First, Joliff agreed to sell to Shain his inter-
est in a building at Grafton, W. Va., at a price equal to
whatever defendant had in it with six per cent interest;
second, Shain agreed to sell to Joliff his interest in certain
property located in Fairmont at a price equal to whatever
he had in it with six per cent interest on the various sums
paid in by him; third, that Joliff and Shain owning all the
stock of the Wise Packing Company (excepting three shares),
and Joliff desiring to give a deed of trust on the company's
property, he agreed to pay Shain all money advanced by him
to the company during the years 1911, 1912, 1913 and 1914,
amounting to approximately $1,462.22, with interest; Joliff
agreed to pay Shain a note given by the Wise Packing Com-
pany to the Fairmont Feed Mill for the sum of $4,000.00,
and their joint note to the same company for $725.85, and
a   balance   on  account   due  that  company  from  the
Wise   Packing   Company   amounting   to   $258.29;   Joliff

also agreed to assume and pay off all the obligations of himself and Shain on joint notes, the proceeds of 'which had gone to the credit of the packing company, held by certain banks and individuals named, amounting in all to $40,500.00, also any other notes they may have issued' jointly for the good of Wise Packing Company. The agreement further recites that it was the intention and desire of the parties to get a good' and fair settlement, and because of the many complications arising out of the connection of said Joliff with the old firm of J. U. Wise & Company, it became necessary to agree upon a specified time to start a settlement from, and that they agreed to take as a basis of such settlement the date of the organization of the Wise Packing Company, at which time the minutes of the company would show how much stock Shain had in the company; and Joliff agreed to ignore the sale of the stock made by the trustee to Shain and to assume all obligations and benefits to himself, Shain to transfer to him or to some one to be designated by him 237 shares of said stock. The last clause of the agreement was as follows: "And this contract as far as we know closes up all matters in controversy between said Joliff and Shain in the matters growing out of any complications growing out of any of the deals of J. U. Wise & Co., or the Wise Packing Co. As this agreement is satisfactory to both parties we herewith attach our signatures and seals."

Defendant contends that this agreement was intended to cover all matters arising out of every transaction in which the parties were interested, in connection with the packing company or the partnership. Plaintiff insists that the note sued on was not in "controversy" at the time, and not being mentioned in the agreement, it was not intended by the parties to be included therein; and that it was not considered in the negotiations leading up to the agreement, and that it remains in full force and effect as an obligation of the packing company and Joliff.

By instruction number one given at the instance of plaintiff, the jury were instructed that if they believed from the evidence that the note sued on was given to guarantee plaintiff against loss by reason of his acceptance of stock in lieu

of the advancements made by him to the packing company; that the plaintiff relied on such contract when he accepted the stock; that the stock became worthless before suit was brought and that plaintiff lost the $2,375.00 invested therein; and that demand for payment of the note had been made and refused, and the stock secured by the note tendered to defendants, then they should find for plaintiff the amount of the note with interest. This instruction leaves out of consideration the theory of defendant Joliff that the note sued on was included in the settlement of November, 1914.

We are of opinion that, the agreement of November 20, 1914, by its terms, was a complete and final settlement of all differences between the parties growing out of their connection with the Wise Packing Company and the complications arising by reason of Joliff's interests in the former partnership. By it Joliff assumed, not only all obligations of the company, but also Shain's obligations as endorser on the company's notes and their joint notes the proceeds of which had been invested in the company. Shain prepared the agreement and presented it to Joliff for execution. He had been a stockholder in the company from the beginning and had subscribed for stock before he paid in the money secured by the note or contract sued on. He was secretary of the company, and says he is not positive whether he was treasurer or not. He must have been fully conversant with the affairs of the company from the time of its organization until its final dissolution; indeed, his testimony proves this. And, how can it be contended that the subject matter of this suit was not in "controversy" at the time of the making of the agreement? Shain in his testimony says that at that time the stock "was not worth anything, because of the fact that the property would not have sold for enough to pay its debts." In fact, he says it never was worth par. The controversy started before the stock was issued to him; it was that controversy that resulted in the execution of the note or contract sued on. Did that note end the controversy until demand for payment thereof was made? It is scarcely to be believed that in an agreement of the kind under consideration, which purports to settle all matters in controversy, an

important item like this would be left out of consideration. It could not have escaped the notice of the parties. One party held the note made by the other, and both knew where all the stock was held; in fact, the agreement states that all the stock (with the exception of three shares) was held by the parties, and that Joliff desired to give a deed of trust on the property of the company. From the terms of the agreement it is evident that Joliff was endeavoring to get in all the stock of the company, in order that he might pledge the property to secure his obligations. Later the corporation was dissolved and its assets merged with another packing company. The agreement recites that it was the intention of the parties to get at a good and fair settlement. A settlement of what? All points in controversy growing out of any of the deals of J. U. Wise & Company and the Wise Packing Company. The advancements made by Shain and the stock issued to him were deals with the company. Indeed, he seems to have had a hand in many of the financial deals of the company. After taking the note of January 11, 1911, he became he purchaser of all the other stock of the company under an agreement to divide it equally with Joliff, and it appears that afterwards they both loaned their credit to the company by becoming joint makers or endorsers on the company's notes, with no agreement on the part of Joliff to protect Shain from loss thereon until the settlement of November, 1914.

We are clearly of opinion that the latter clause of the agreement, written by plaintiff himself, bound both parties to accept it as a final settlement of all matters in connection with and growing out of their deals with the partnership and corporation mentioned therein, in the absence of fraud or mistake. And we think, from the record as it is presented to us, that defendant was entitled to the peremptory instruction refused him.

In view of our finding as to the agreement, it becomes unnecessary to discuss the other errors assigned, relating to failure of consideration, the giving and refusing of instructions, and to certain evidence offered by defendant in explanation of certain provisions in the agreement.

The judgment will be reversed, the verdict of the jury set aside, and the defendants awarded a new trial.

*Reversed; new trial awarded.*